19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

**D-1 AJIT HOTCHAND SUBNANI,**

**D-2 MADHU AJIT SUBNANI**

        **Defendants,**

Case: 2:22-cr-20611
Judge: Goldsmith, Mark A.
MJ: Stafford, Elizabeth A.
Filed: 11-16-2022 At 04:12 PM
INDI USA V. SUBNANI ET AL (NA)

OFFENSES:

Count 1:
18 U.S.C. § 157 (1), (2), & (3) –
Bankruptcy Fraud Scheme

Counts 2 – 3:
18 U.S.C. § 152 (2) –
False Oaths in Bankruptcy

Counts 4 – 7:
18 U.S.C. § 152 (3) –
False Declarations in Bankruptcy

Forfeiture Allegations

_____/

# INDICTMENT

THE GRAND JURY CHARGES:

1

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. AJIT HOTCHAND SUBNANI (D-1) ("A. SUBNANI") was a resident of the City of Rochester Hills, Michigan.

2. MADHU AJIT SUBNANI (D-2) ("M. SUBNANI") was a resident of the City of Rochester Hills, Michigan and was also a medical doctor.

3. A. SUBNANI and M. SUBNANI (collectively referred to herein as "the SUBNANIs"), were husband and wife.

4. A. SUBNANI owned and operated a number of business entities, including Ganesh Investments, LLC ("GI, LLC").

5. M. SUBNANI owned and operated a number of business entities, including Complete Family Health Care, PC, ("CFHC, PC").

6. The SUBNANIs were the petitioners in a voluntary Chapter 13 proceeding in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Bankruptcy Court"), which bankruptcy proceeding was filed in November 2019, entitled *In re: Ajit Hotchand Subnani and Madhu Ajit Subnani,* Bankruptcy Case No. 19-55788 (the "Subnani Bankruptcy Case").

7. A Chapter 13 bankruptcy proceeding, also referred to as a wage

2

earners plan, was authorized by Title 11 of the United States Code. This proceeding enabled the SUBNANIs to propose a plan to use their regular income to repay all or a portion of the debts they owed. The repayment plan allowed the SUBNANIs to make installment payments to their creditors over time. While payments were being made, creditors were not permitted to start or continue collection proceedings. If the SUBNANIs successfully complied with the terms of their repayment plan, they would receive a discharge of their debts.

8. Debtors seeking a Chapter 13 bankruptcy had to file a Petition, and a Summary of Schedules, listing the value of their assets.

9. Debtors had to file documents with the Bankruptcy Court supporting the existence and value of their real property and personal property, creditor information and amounts owed, and total monthly income and expenditures, which were called Schedules.

10. Debtors were also required to file a Statement of Financial Affairs (a "SOFA"). The SOFA "looked back" at a debtor's various financial matters, including: gross income from all sources during the current year and two years prior to filing bankruptcy; transfers of any property within two years prior to filing bankruptcy; and any businesses which a debtor owned or was an officer or partner of within four years prior to filing bankruptcy.

11. The SUBNANIs Petition, Schedules, and SOFA were all signed by them under oath and under penalty of perjury.

12. Following the filing of the Chapter 13 bankruptcy Petition, the Bankruptcy Court appointed a Chapter 13 trustee who oversaw the Subnani Bankruptcy Case. The Chapter 13 trustee's primary responsibility was to collect the payments the SUBNANIs made through their payment plan and distribute those payments to their creditors.

13. As part of the Subnani Bankruptcy Case, the Chapter 13 trustee conducted a creditor's hearing, known as a Section 341 Meeting of Creditors (the "341 Meeting"). The SUBNANIs were placed under oath and the Chapter 13 trustee (and others, including creditors), could ask the SUBNANIs questions about their bankruptcy and their finances.

14. Prior to the filing of the Subnani Bankruptcy Case, the SUBNANIs routinely gambled at the MGM Casino, in Detroit, Michigan. During the Subnani Bankruptcy Case, A. SUBNANI continued to gamble at the MGM Casino, often gambling over $10,000 per day.

15. As part of their gambling, the SUBNANIs would use casino chips, which were used in place of currency at casinos. The casino chips had a cash value, which could be redeemed for cash. This allowed the casino to keep track of its

casino chips, the SUBNANIs winnings and losses, and calculate taxes on the SUBNANIs winnings.

16. If the SUBNANIs did not return the casino chips, that was called "chip walking".

## SUBNANI SCHEME TO DEFRAUD

17. In February 2019, prior to filing the Subnani Bankruptcy Case, M. SUBNANI, as owner of CFHC, PC, transferred and sold via a Quit Claim deed to GI, LLC, owned by A. SUBNANI, real property located at 542 N. Cedar, Imlay City, MI (the "Imlay City Property"). The transfer of the Imlay City Property was a material asset the SUBNANIs, with intent to defraud, concealed from their creditors, the Chapter 13 trustee, and the Bankruptcy Court.

18. In March 2019, prior to filing the Subnani Bankruptcy Case, A. SUBNANI filed, or caused to be filed, an earlier Chapter 13 bankruptcy case in the Bankruptcy Court, entitled *In re: Ajit Hotchand Subnani*, Bankruptcy Case No. 19-44673 (the "A. Subnani BR Case").

19. In May 2019, as part of the A. Subnani BR Case, and to defraud his creditors, A. SUBNANI failed to disclose, concealed, and provided material false information in his Schedule B, and SOFA, regarding his:

    a. Possession of assets consisting of cash, and "chip walked" casino chips;

      b.      Gambling winnings, and losses;

      c.      His actual ownership and control of GI, LLC, which M. SUBNANI was also aware of and concealed;

      d.      The ownership by GI, LLC of the Imlay City Property, which M. SUBNANI was also aware of and concealed.

20.      In December 2019, the SUBNANIs filed, or caused to be filed in the Subnani Bankruptcy Case, Schedules of Assets and Liabilities, including Schedule B, which required the SUBNANIs to list all personal property they owned or had an interest in, and their SOFA.

21.      As part of their fraud scheme, despite the SUBNANIs having filed their Schedules of Assets and Liabilities, and their Schedule B, and SOFA, signed under penalty of perjury, they provided material false information in their Schedule B and SOFA.

22.      As part of the fraud scheme A. SUBNANI knowingly and fraudulently made material false declarations and statements in Schedule B and SOFA by concealing and lying about MGM Casino, Detroit casino chips he "chip walked", with an estimated value over $390,000, between on or about 11/07/2018 and 11/06/2019.

23.      As part of the fraud scheme A. SUBNANI knowingly and

fraudulently made material false declarations and statements and concealed casino chips and cash he used at MGM Casino, Detroit totaling over $850,000, including casino chips he redeemed valued at over $118,000, between on or about 11/07/2018 and 11/06/2019; and amounts he continued to gamble with at MGM Casino, Detroit during the Subnani Bankruptcy Case.

24. As part of the fraud scheme M. SUBNANI knowingly and fraudulently made material false declarations and statements in the Subnani Bankruptcy case by concealing and lying about over $1,200 in gambling losses at MGM Casino, Detroit, between on or about 1/01/2019 to 7/27/2019.

25. As part of their fraud scheme, the SUBNANIs failed to disclose, concealed, and provided material false information in the Subnani Bankruptcy Case about A. SUBNANI's full ownership and control of GI, LLC.

26. In December 2019, the SUBNANIs filed their Chapter 13 payment plan ("Plan"), in which they, with the intent to use the bankruptcy system to defraud their creditors, the Bankruptcy Court, and others, falsely indicated they could only pay their creditors $2,100 per month, for 60 months.

27. To trick their creditors, the Chapter 13 trustee, and the Bankruptcy Court, the SUBNANIs falsely claimed in their Plan that GI, LLC had a value of $0 and they only had available $16,046.05 to pay their unsecured creditors if their

assets were liquidated.

28. In December 2019, to further their scheme to defraud, the SUBNANIs filed an amended Chapter 13 payment plan ("Amended Plan"), in which they falsely indicated they could only pay their creditors $2,150 per month, for 60 months. In their Amended Plan, the SUBNANIs again falsely claimed GI, LLC had a value of $0, and that only $4,175.06 was available to pay their unsecured creditors if their assets were liquidated.

29. In December 2019, the SUBNANIs appeared for their 341 Meeting and were both placed under oath. After having sworn to tell the truth, and with the intent to defraud, among others, their creditors and the Bankruptcy Court, the SUBNANIs falsely affirmed the statements they made were true and accurate and there were no other errors or omissions.

30. As part of their fraud scheme, the SUBNANIs failed to disclose, concealed, and provided material false information in the Subnani Bankruptcy Case regarding over $400,000 in cash kept in their personal residence.

31. To continue hiding their assets and defrauding their creditors, in September 2020, the SUBNANIs filed a motion to voluntarily dismiss the Subnani Bankruptcy Case. The Subnani Bankruptcy case was dismissed, and subsequently closed in December 2020, with no money paid by the Chapter 13 trustee to the

SUBNANIs unsecured creditors.

---

## COUNT ONE
(18 U.S.C. § 157 - Bankruptcy Fraud Scheme)

D-1  **AJIT HOTCHAND SUBNANI**

D-2  **MADHU AJIT SUBNANI**

32.  The General Allegations and paragraphs 17 - 31 are included in this count.

33.  In February 2019, M. SUBNANI, as owner of CFHC, PC, (which entity was disclosed as an entity in Schedule B and SOFA in the Subnani Bankruptcy Case), Quit Claim Deeded her ownership of the Imlay City Property to GI, LLC (which entity was also disclosed in Schedule B and SOFA in the Subnani Bankruptcy Case), which company was owned by A. SUBNANI.

34.  The SUBNANIs failed to inform and concealed from their creditors, the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy Court, the transfer to, and ownership by GI, LLC, of the Imlay City Property.

35.  In or about September 2020, during the Subnani Bankruptcy case, A. SUBNANI, as the owner of GI, LLC, listed the Imlay City Property for sale with a list price of $280,000.00, which A. SUBNANI concealed from his creditors and failed to disclose to the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy

Court.

36. In December 2020, after the SUBNANIs had the Subnani Bankruptcy Case dismissed, and after the Subnani Bankruptcy Case was closed, A. SUBNANI, with the intent to defraud, sold the Imlay City Property for a contract price of $165,000.00.

37. Also with intent to defraud, the SUBNANIs failed to inform and concealed from their creditors, the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy Court, cash, gambling winnings and losses, the transfer to and ownership of the Imlay City Property by GI, LLC, and concealed "chip walked" casino chips, and extensive gambling winnings and losses.

38. Beginning in or about October 2019, prior to the filing of the Subnani Bankruptcy Case, through December 2020, when the Subnani Bankruptcy Case was closed, the SUBNANIs devised and engaged in a scheme to defraud their creditors, the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy Court, and for the purpose of executing and concealing their scheme, by means of false and fraudulent pretenses and representations, and for the purpose of executing and concealing their scheme, the SUBNANIs filed, or caused to be filed, their bankruptcy Petition as part of the Subnani Bankruptcy Case in November 2019.

39. Beginning in or about October 2019, prior to the filing of the Subnani

Bankruptcy Case, through December 2020, when the Subnani Bankruptcy Case was closed, the SUBNANIs devised and engaged in a scheme to defraud their creditors, the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy Court, and for the purpose of executing and concealing their scheme, by means of false and fraudulent pretenses and representations and for the purpose of executing and concealing their scheme, the SUBNANIs filed, or caused to be filed, documents in the Subnani Bankruptcy Case including their Schedule B, SOFA, Plan, Amended Plan, and Motion to Dismiss their bankruptcy case.

40. The purpose of the SUBNANIs scheme was to hide the true nature of their assets, income, losses, and expenses without intending to disclose this information to their creditors, the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy Court, in order to not have to re-pay amounts owed to their creditors, stop collection actions by their creditors, and hiding relevant and material information from their creditors, the Chapter 13 trustee, the U.S. Trustee, and the Bankruptcy Court, and otherwise attempting to obtain a discharge of their debts.

All in violation of Title 18, United States Code, §157 (1), (2) and (3).

## COUNT TWO
### (18 U.S.C. § 152(2) – False Oaths in Bankruptcy)

D-1   **AJIT HOTCHAND SUBNANI**

D-2   **MADHU AJIT SUBNANI**

41.   The General Allegations and paragraphs 17- 40 are included in this count.

42.   In December 2019, the SUBNANIs knowingly and fraudulently made false oaths as to material matters in relation to the Subnani Bankruptcy Case. At their 341 Meeting, after both being placed under oath, the SUBNANIs testified falsely as follows:

| Count | Questions asked to Defendants | False Answers given by Defendants |
|---|---|---|
| 2 | *Other than what we just talked about regarding the home, everything is true and accurate to the best of your knowledge, information, and belief, is that right?*<br><br>And<br><br>*And the – there's no other errors or omissions to bring to the attention of the Trustee?* | A: A. Subnani- *"Yes"*.<br>A: M. Subnani- *"Yes"*<br><br>And<br><br>A: A. Subnani- *"No"*.<br>A: M. Subnani- *"No"*. |

which answers, as the SUBNANIs well knew, were false as set forth in Counts One through Seven, all in violation of Title 18, United States Code, Section 152(2).

## COUNT THREE
### (18 U.S.C. § 152(2) – False Oaths in Bankruptcy)

**D-1 AJIT HOTCHAND SUBNANI**

43. The General Allegations and paragraphs 17- 42 are included in this count.

44. In December 2019, A. SUBNANI knowingly and fraudulently made false oaths as to material matters in relation to the Subnani Bankruptcy Case. At their 341 Meeting, after both being placed under oath, A. SUBNANI testified falsely as follows:

| Count | Questions asked to Defendants | False Answers given by Defendant |
|---|---|---|
| 3 | *Ganish (sp) Investments, this needs to be removed. You said your name is not actually-- is not on this?* | A: A. Subnani- *"I'm a resident agent"*. |
|  | *That's right, you're only the resident agent, but you don't hold any interest or have any investor shares in that business, is that right?* | A: A. Subnani- *"Yes"*. |
|  | *Your daughter owns this LLC, is that right?* | A: A. Subnani – *"Yes"* |

which answers, as A. SUBNANI well knew, were false as set forth in Counts One through Seven, all in violation of Title 18, United States Code, Section 152(2).

## COUNTS FOUR and FIVE
*(18 U.S.C. §152(3) – False Declarations in Bankruptcy)*

**D-1   AJIT HOTCHAND SUBNANI**

**D-2   MADHU AJIT SUBNANI**

45.   The General Allegations and paragraphs 17- 44 are included in these counts.

46.   The SUBNANIs knowingly and fraudulently made false declarations, verifications, or statements under penalty of perjury as to material matters in their Schedule B (Personal Property) and their SOFA, in that their answers to item 16 in Schedule B and item 18 in their SOFA were not true and accurate, as follows:

| Count | Schedule B-Item# and description | Property Disclosed by Defendants | Information Not Disclosed by Defendants |
|---|---|---|---|
| 4 | #16. Cash | None | Over $400,000 in cash. |
|  | **SOFA Question#** | **Information Disclosed By defendants** | **Information not disclosed by Defendants** |
| 5 | #18. Within 2 years before filing bankruptcy, transfers, or sale of any property, to anyone | None | In or about February 2019, M. SUBNANI, as owner of CFHC, PC, transferred and sold via a Quit Claim deed the Imlay City Property to GI, LLC, owned by A. SUBNANI. |

All in violation of Title 18, United States Code, Section 152(3).

## COUNTS SIX and SEVEN
(18 U.S.C. §152(3) – False Declarations in Bankruptcy)

D-1   **AJIT HOTCHAND SUBNANI**

47.   The General Allegations and paragraphs 17- 46 are included in these counts.

48.   A. SUBNANI knowingly and fraudulently made false declarations, verifications, or statements under penalty of perjury as to material matters in the Subnani Bankruptcy Case in his SOFA, in that his answers to items 5 and 15 in his SOFA were not true and accurate, as follows:

| Count | SOFA Question # | Information Disclosed by defendant | Information not disclosed by Defendant |
|---|---|---|---|
| 6 | #5. This year and in the two previous calendar years, income, regardless if taxable, from, by way of example, gambling winnings | None | From on or about 11/07/2018 to 11/06/2019 chip redemptions of over $118,000.00 at MGM Casino, Detroit by A. SUBNANI |
| 7 | #15. Within 1 year before filing bankruptcy, any loss, | None | From on or about 11/07/2018 to 11/06/2019 losses over approx. $67,000.00 at MGM Casino, Detroit by A. SUBNANI |

| | including due to gambling | | |
|---|---|---|---|

All in violation of Title 18, United States Code, Section 152(3).

### FORFEITURE ALLEGATION
*(18 U.S.C. § 981(a)(1)(C), and  
28 U.S.C. § 2461– Criminal Forfeiture)*

49. The allegations contained in the General Allegations, paragraphs 17-31, and Counts 2 through 7 of this Indictment are hereby incorporated by reference for the purpose of alleging forfeiture pursuant to the following statutes: Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c).

50. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of the offense(s) charged in Counts 2 through 7, in violation of Title 18, United States Code, Section 152, Defendant A. SUBNANI and Defendant M.SUBNANI shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds traceable to such violations.

51. **Forfeiture Money Judgment**. Such property includes but is not limited to, a forfeiture money judgment in an amount to be determined, representing the total value of all property real or personal, constituting, or derived from proceeds

traceable to violations of 18 U.S.C. §152, as alleged in Counts 2 through 7.

52. **Substitute Assets.** Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), Defendant A. SUBNANI and Defendant M. SUBNANI shall forfeit substitute property, up to the value of the properties described above, if, by any act or omission of the Defendants, the property described above: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty.

THIS IS A TRUE BILL

*/s/Grand Jury Foreperson*
GRAND JURY FOREPERSON

DATED: November 16, 2022

DAWN N. ISON
United States Attorney
*/s/ John K. Neal*
JOHN K. NEAL
Chief, White Collar Crime Unit
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9644
John.Neal2@usdoj.gov

/s/ *Karen Reynolds*
KAREN REYNOLDS
Assistant U. S. Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226- 9672
KReynolds@usdoj.gov

/s/ *Richard A. Roble*
RICHARD A. ROBLE
Special Assistant U.S. Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 348-8179
Richard.Roble@usdoj.gov

Dated: November 16, 2022

(Companion Case information MUST be completed by AUSA and...

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case:2:22-cr-20611<br>Judge: Goldsmith, Mark A.<br>MJ: Stafford, Elizabeth A.<br>Filed: 11-16-2022 At 04:12 PM<br>INDI USA V. SUBNANI ET AL (NA) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to co

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: R.A.R |
| ☐ Yes   ☒ No | AUSA's Initials: |

**Case Title:** USA v. Subnani et al

**County where offense occurred :** Wayne

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

✔ Indictment/ ____ Information --- **no** prior complaint.
____ Indictment/ ____ Information --- based upon prior complaint [Case number: ____ ]
____ Indictment/ ____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

November 16, 2022
Date

/Richard A. Roble
Richard A. Roble
Special Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone:(313) 438-8179
Fax: (313) 226-2873
E-Mail address: Richard.Roble@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.